# Commonwealth *v.* Rubin, Appellant.

*Criminal law — Intoxicating liquors — Transportation—Search and seizure—Act of March 27, 1923, P. L. 34.*

On the trial of an indictment charging the defendant with the unlawful transportation of intoxicating liquor for beverage purposes, in violation of the provisions of the Act of March 27, 1923, P. L. 34, the arrest by an officer without a warrant is proper when the officer had reasonable ground to believe that a misdemeanor was being committed.

The right given under the 9th section of the Act of March 27, 1923, P. L. 34, to arrest without a warrant any person discovered in the act of transporting intoxicating liquor, is not contrary to the provisions of the Constitution of Pennsylvania providing against unreasonable search and seizure.

Where an officer believes from his own observation, or from information from sources so reliable that a prudent person, having due regards for the rights of others, would act thereon, and has reasonable and probable cause to believe a vehicle is engaged in unlawful transportation in his presence, he may arrest, search and seize without a warrant.

Under the provisions of the Act of March 27, 1923, P. L. 34, there can be no lawful possession of intoxicating liquor for beverage purposes in the course of transportation, and the law declares that no property right shall exist therein; that the same shall be deemed contrabrand and forfeited to the Commonwealth. A search for and seizure of stolen or forfeited goods, or property, the possession of

which is, in the circumstances, unlawful, are totally different from a search for and seizure of a man's private books and papers.

The provision of the Constitution of Pennsylvania which secures the citizen against unreasonable search and seizure therefore does not apply to property, the possession of which has been absolutely prohibited by the statute.

It was not error for the trial court to refuse to order the liquors seized to be returned to the defendant. There can be no lawful possession of such liquor and the act declares there can be no property right therein.

Argued November 19, 1923. Appeal, No. 86, April T., 1924, by defendant, from judgment of Q. S. Armstrong Co., Sept. Sessions, 1923, No. 26, on a verdict of guilty in the case of Commonwealth of Pennsylvania v. Harry Rubin. Before ORLADY, P. J., PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ. Affirmed.

Indictment for illegal possession and transportation of liquor. Before KING, P. J.

The facts are stated in the opinion of the Superior Court.

Verdict of guilty on which judgment of sentence was passed. Defendant appealed.

*Errors assigned* were in discharging rule to show cause why the liquor and automobile seized under the State Prohibition Act should not be returned, various rulings on evidence and the sentence of the court.

*H. D. Hirsh,* and with him *E. O. Golden,* for appellant.—The police power of the state is not justified, without a search warrant, under paragraph 9 of the Act of March 27, 1923, P. L. 34, in conducting unlimited searches and seizure of property of persons while on the public highway: 8 Ruling Case Law 285; U. S. v. Rembert, 284 Fed. Rep. 996.

Evidence obtained while conducting an unlawful search was inadmissible: U. S. v. Dziadus (U. S. District Court, N. D. W. Va.), 289 Fed. Rep. 837.

No appearance and no printed brief for appellee.

OPINION BY PORTER, J., December 12, 1923:

The indictment in this case charged the defendant with the unlawful transportation of intoxicating liquor for beverage purposes, in violation of the act entitled "An act concerning alcoholic liquors" etc., approved March 27, 1923. The trial resulted in a conviction and sentence, from which we have this appeal by the defendant. The evidence clearly established the guilt of the defendant, but he complains that the manner in which the liquor was seized by the officers of the Commonwealth and used as evidence at the trial involved a violation of his constitutional rights. The defendant while driving a motor vehicle along the public highway, was arrested without a warrant by a member of the State Constabulary, who found in the vehicle one hundred bottles of intoxicating liquor, whereupon the officer seized the liquor and the vehicle, made an information before a justice of the peace charging the defendant with violation of the statute; the justice duly issued his warrant and, after a hearing, held the defendant to bail to answer at the next court of quarter sessions, and the liquor and vehicle seized were by the constable delivered to the district attorney of the county. The defendant subsequently presented to the court his petition setting forth that he had been driving his automobile along the public highway in a careful and lawful manner without arousing any suspicions whatever, when he was ordered to stop by the officer, who proceeded to search the vehicle and finding the liquor seized the same and the vehicle; that the officer had no search warrant or warrant for the arrest of the defendant; that the arrest, search and seizure were in violation of the fourth and fifth amendments of the Constitution of the United States; that the property was taken from the possession of the petitioner unlawfully, was then in the possession of the district attorney who proposed to use it as evidence upon the trial of the

defendant, which would be in violation of the defendant's rights. The petition prayed for a rule upon the district attorney and the arresting officer to show cause "why liquors and automobile seized under the State Prohibition Act should not be returned to him, and that the bond on file in this case be declared cancelled and to no effect; and that the district attorney and the arresting officer should be restrained from giving any testimony as to what they found in the automobile." The court granted a rule to show cause, to which the district attorney filed an answer averring that the officer who arrested the defendant had been notified that "the said Harry Rubin and Lawrence Peters were driving a Buick automobile and that it contained liquor;" that the said officer had reasonable ground to believe and did believe that a misdemeanor was being committed, and, "upon stopping the said automobile without a diligent search he found eighty pints and twenty quarts of intoxicating liquor." The court, after a hearing, discharged the rule, to which action the defendant excepted and here assigns for error. The other assignments of error refer to the admission in evidence, notwithstanding the objection of the defendant, of the liquors seized and the testimony of the officers as to the manner in which the arrest was made and the finding of the liquors in the automobile.

The questions involved are the following: (1) Did the court err in refusing to discharge the defendant from custody and decree that his bond be cancelled, because of the manner of his arrest? (2) Was there error in the refusal of the court to order that the liquors be returned to the defendant, because of the manner in which they were seized? (3) Did the court err in admitting in evidence the liquors and the testimony of the officers who seized them while in course of transportation? It is contended on behalf of the defendant that his arrest, the search of his automobile, and the seizure of the liquors involved a violation of his rights guaranteed by the fourth and fifth amendments of the Constitution of the

United States, and by Article I, section 8 of the Constitution of Pennsylvania.

The fourth and fifth amendments of the Constitution of the United States contain no restrictions on the powers of the states, but were intended to operate solely on the Federal government and the Federal courts: Brown v. New Jersey, 175 U. S. 172; Bolln v. Nebraska, 176 U. S. 83. We have, therefore, to consider only the provision of the Constitution of Pennsylvania, invoked by the defendant, which provides that: "The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant." The appellant insists, that under this provision of the Constitution, no arrest, for the offense with which he is charged, is lawful without a warrant, issued on probable cause supported by oath. Whether this be the true construction of the Constitution is the main point in the cause. The substance of the provisions of this section of the Constitution of 1874 had been embodied in all the earlier Constitutions of the Commonwealth. The provisions of this section, so far as concerns warrants, only guard against their abuse by issuing them without good cause, or in so general and vague a form, as may put it in the power of the officers who execute them to harass innocent persons under pretense of suspicion. Concerning such a constitutional provision, Chief Justice TILGHMAN, in Wakely v. Hart, 6 Binney 318, said: "It is nowhere said, that there shall be no arrest without warrant. To have said so would have endangered the safety of society. The felon who is seen to commit murder or robbery, must be arrested on the spot or suffered to escape. . . . . . These are principles of the common law, essential to the welfare of society, and not intended to be altered or impaired by the Constitution. The whole section in-

deed was nothing more than an affirmance of the common law, for general warrants had been decided to be illegal; but as the practice of issuing them had been ancient, the abuse great and the decisions against them only of modern date, the agitation occasioned by the discussion of this important question had scarcely subsided, and it was thought prudent to enter a solemn veto against this powerful engine of despotism. I am therefore of opinion, that the defendants were justified in making the arrest, if they could prove the plaintiff guilty of larceny, consequently the record tending to prove the larceny was legal evidence." The arrest there involved was, in fact, made upon suspicion that the party arrested had been guilty of felony. The important point there decided was that the constitutional provision "was nothing more than an affirmance of the common law," and did not prohibit the arrest of an offender without a warrant, in circumstances warranted by common law principles. A constable may, without a warrant, arrest a person for an affray which takes place in his presence. "There is no danger to the liberty of the citizen in this; for if the arrest and detention be improper, the prisoner can have instant redress by writ of habeas corpus, and the constable may be punished by indictment, or subjected to damages in an action of trespass. On the other hand, were the law otherwise, the means of securing the persons of prisoners, and of acting with decisive effect in quelling affrays and riots, would be greatly and unnecessarily lessened": Com. v. Deacon, 8 S. & R. 47. In Russell v. Shuster, 8 W. & S. 308, which was an action of trespass for false imprisonment, the arrest had been made without a warrant, upon suspicion alone, there was no allegation that a felony had been committed by any person; the greater part of the evidence was from the contents of the trunk of the defendant, examined with his consent after his arrest. Chief Justice GIBSON said, in his opinion in that case: "A constable may justify an arrest for reasonable cause of suspicion alone." The du-

ties and powers of a constable, at common law and under our statute, were discussed by AGNEW, J., in McCullough v. Com., 67 Pa. 30; it was there declared, in substance, that the authority of the officer to arrest without a warrant remained as at common law, save as expressly modified by statute, and it was again said "A constable may justify an arrest for a reasonable cause of suspicion alone." It is proper here to observe that the case last cited was one involving a violation of the liquor law, and not a felony. These decisions and many others that might be cited establish that the constitutional provision with which we are now dealing does not render unlawful all arrests without warrant; what it does forbid is "unreasonable" arrests, searches and seizures, and whether an arrest without a warrant is unreasonable is to be determined according to the principles of the common law.

The authority of a constable to arrest without a warrant upon reasonable suspicion, founded either on his own knowledge or the information of others, that a felony or such breach of the peace as would probably prove to be a felony, has been committed, cannot be questioned. It is equally well settled that he cannot arrest for an ordinary misdemeanor, unless present at the commission of the offense. In some of the adjudicated cases it has been said that an officer may arrest upon reasonable suspicion of felony, or for a breach of the peace committed in his presence, and this has no doubt led to the suggestion now made that the authority of an officer to arrest for a misdemeanor committed in his presence is confined to those cases in which the offense involves a breach of the peace. We find no decision of the Supreme Court of Pennsylvania which recognizes such a limitation upon the authority of an officer to arrest for a misdemeanor committed in his presence. In McCullough v. The Commonwealth, supra, the opinion cited as authority in support of the conclusion there reached 2 Hawkins Pleas of the Crown, chap. 10, sec. 34, and in that section we find it stated as among the common law

powers of the constable to arrest without a warrant: "All suspicious persons that go abroad in the night, and sleep by day, or resort to bawdy houses, or keep suspicious company, and to suppress affrays." "By the original and inherent power in the constable he may for breach of the peace and some misdemeanors, less than felony, imprison a person. The arrest, when the crime charged is not a felony, must be made while the crime is being actually committed, in the presence of the officer": 2 Hale's Pleas of the Crown 88. At common law a private citizen was permitted, without a warrant, to arrest for certain offenses and deliver the offender to the constable or take him before a magistrate. "Also it hath been adjudged, that any one may apprehend a common and notorious cheat going about the country with false dice, and being actually caught playing with them in order to have him before a justice of the peace, for the public good requires the utmost discouragement of all such persons; and the restraining of private persons from arresting them without a warrant from a magistrate, would often give them an opportunity of escaping. And from the reason of this case it seems to follow, that the arrest of any other offenders by private persons, for offenses in like manner scandalous and prejudicial to the public, may be justified;" 2 Hawkins Pleas of the Crown, chap. 12, sec. 20, and in the following chapters the learned author shows that in all cases where a private person was permitted to make an arrest, for an offense committed in his presence, like authority was vested in the constable. When the officer makes the arrest without a warrant he takes the risk of being able to show probable cause, subject, in case of his failure to do so, to the consequences stated by Chief Justice Gibson, in Com. v. Deacon, supra, being "punished by indictment, or subjected to damages in an action of trespass": McCarthy v. DeArmit, 99 Pa. 63.

The foregoing principles have been brought into view because of their direct application to the present case.

We may now turn to the discussion of the first question involved: Did the court err in refusing to discharge the defendant from custody and decree that his bond be cancelled? This question might be disposed of in the present case adversely to the contentions of the defendant upon the ground that an information had been regularly made, a warrant issued, a hearing held by the magistrate and the defendant gave bail to answer the charge at the next term of the court of quarter sessions. The question is one which seems to have arisen in a number of cases, however, and it is important that we promptly decide it. The ninth section of the Act of March 27, 1923, authorizes any officer to arrest without a warrant any person discovered in the act of transporting, in violation of this act, intoxicating liquor in any wagon, buggy, motor vehicle,......or other receptacle. Here was express legislative authority to arrest without a warrant, an offender caught in the act of transporting intoxicating liquor for beverage purposes in violation of the Constitution of the United States and the statute of Pennsylvania. There was no doubt that the defendant had been discovered in the act of transporting liquor in violation of the statute. The statute did not authorize the officer to imprison the defendant, but required that he at once take him before a magistrate and make an information in due form, which the officer did in this case. The question, therefore, is: Are these provisions of the statute authorizing an arrest without a warrant invalid, because in contravention of the constitutional provision?

The offense was not a felony, but involved a violation of the Constitution of the United States and was a misdemeanor punishable by fine and imprisonment under the Pennsylvania statute. It consisted in the transportation of the liquor; and to hold that there could be no arrest without a warrant from a magistrate would necessarily give an opportunity for escaping from the jurisdiction; the very reason for which the common law authorized an arrest without a warrant in many minor

offenses. The offense was committed in the presence of the officer, which is the material question in arrests of this character. There has been much discussion as to whether an officer must see or smell the liquor before he can lawfully arrest the person engaged in the transportation thereof. We do not deem these matters controlling. When an officer sees a bottle containing some liquid, he can only suspect that the contents are probably intoxicating liquor. If a bottle happens to break he may be of opinion that it smells like intoxicating liquor. These are only circumstances which lead him to suspect that the substance transported is intoxicating liquor. Reasonable suspicion, probable cause for making the arrest, may just as well be founded upon information derived from others which gives the officer reasonable ground to believe and actually causes him to believe that liquor is then and there being transported in violation of law. When the officer believes from his own observation, or from information from sources so reliable that a prudent person, having due regard to the rights of others, would act thereon, and has reasonable and probable cause to believe, that a vehicle is engaged in unlawful transportation in his presence, he may arrest, search and seize without a warrant. The statute unquestionably authorizes arrest without a warrant in such cases. It cannot be construed to mean arrests, without a warrant, in any case where there is not probable cause. This is in entire accord with common law principles, is not an infringement of the constitutional provision, and is a valid exercise of legislative power. Whether the officer making the arrest, when afterwards required in an action of trespass to show probable cause, can justify by showing that the person arrested was actually guilty of the unlawful transportation, is a question which we are not now required to consider: Wakely v. Hart, supra; 2 Hawkins P. C., chap. 12, sec. 18. The assignments of error which raise the first question involved are overruled.

Was there error in the refusal of the court to order that the liquors be returned to the defendant, because of the manner in which they were seized? It must be kept in mind that we are here dealing with a case in which the liquors were seized while in the actual course of transportation upon a public highway. The statute expressly authorizes the seizure of such liquors. It provides for search warrants in other cases and regulates seizures thereunder, and strictly limits the authority to issue a warrant to search any private dwelling. Under the provisions of the statute the possession of intoxicating liquor in a private dwelling may be entirely lawful, and so perhaps when at rest in some other building. The provisions of the statute relating to the issuing of search warrants and the execution thereof will be considered by our Brother KELLER in an opinion filed contemporaneously herewith. Under the provisions of the statute the transportation of intoxicating liquor for beverage purposes is absolutely prohibited. There can be no lawful possesson of such liquor in the course of transportation, and the act declares that no property right shall exist therein; that the same shall be deemed contraband and forfeited to the Commonwealth. We are not here dealing with the seizure of a man's private books and papers, for the purpose of obtaining evidence that he has, at some other time or place, been guilty of an offense, or that he is engaged in a conspiracy to commit some crime in the future. The search for and seizure of stolen or forfeited goods, or property the possession of which is, in the circumstances, unlawful, are totally different things from a search for and seizure of a man's private books and papers. "In the one case the government is entitled to the possession of the property; in the other it is not. The seizure of stolen goods is authorized by the common law; and the seizure of goods forfeited for a breach of the revenue laws, or concealed to avoid the duties payable on them, has been authorized by the English statutes for at least two centuries past; and the

like seizures have been authorized by our own revenue acts from the commencement of the government...... So, also the laws which provide for the search and seizure of articles and things which it is unlawful for a person to have in his possession for the purpose of issue or disposition, such as counterfeit coin, lottery tickets, implements of gambling, etc., are not within this category. ......Many other things of this character might be enumerated": Boyd v. United States, 116 U. S. 623. The same distinction was referred to in Gouled v. United States, 255 U. S. 308, and it was there said a primary right to such search and seizure may be found in the interest which the public or the complainant may have in the property to be seized, or in the right to the possession of it, or when a valid exercise of the police power renders possession of the property by the accused unlawful and provides that it may be taken.

The provision of the Constitution of Pennsylvania which secures the citizen from unreasonable arrest is the same which protects his property from unreasonable searches and seizures. What we have said in considering the question of the right of this defendant to be discharged from custody applies to the determination of the question of his alleged right to have the liquor seized in course of transportation returned to his possession. Whether search and seizure is or is not unreasonable must be determined from the facts in the particular case. The liquor in the present case, was seized when in actual course of transportation; from the very fact that it was in course of transportation, it was, by force of the statute, forfeited to the Commonwealth and the appellant ceased to have any property therein. The mere possession of the property, without more, constituted, in the circumstances, the complete offense. Had the court ordered that the automobile with its load of intoxicating liquor be returned to the appellant, in order that he might continue his journey, his possession of the liquor, in such circumstances, would still have been unlawful,

even if the officer in making the original seizure had exceeded his authority. The defendant was seeking to secure the return of property, the possession of which by him had been and would continue to be absolutely prohibited by the statute. The court did not err in refusing to order the return of the property. The specifications of error which raise this question are dismissed.

The court did not err in admitting in evidence the liquor and the testimony of the officer who seized it while in course of transportation. "If the search warrant were illegal, or if the officer serving the warrant exceeded his authority, the party on whose complaint the warrant issued, or the officer, would be responsible for the wrong done; but this is no good reason for excluding the papers [lottery tickets] seized in evidence, if they were pertinent to the issue, as they unquestionably were. When papers are offered in evidence the court can take no notice how they were obtained, whether lawfully or unlawfully; nor would they form a collateral issue to determine that question": Com. v. Dana, 2 Metcalf (Mass.) 329; Stevison v. Ernest, 80 Ill. 513. This principle was reaffirmed in Com. v. Tibbets, 157 Mass. 519; Com. v. Acton, 165 Mass. 11; Com. v. Smith, 166 Mass. 370; People v. Mayen, (Cal.), 205 Pacific 435; Chastang v. State, 83 Ala. 29; State v. Flynn, 36 N. H. 64; Com. v. Vigliotti, 75 Pa. Superior Ct. 378; Com. v. Grasse, 80 Pa. Superior Ct. 480 and Adams v. New York, 192 U. S. 594. All the assignments of error are dismissed.

The judgment is affirmed and it is ordered that the defendant appear in the court below at such time as he may be there called and that he be by that court committed until he has complied with the sentence or any part of it which had not been performed at the time the appeal in this case was made a supersedeas.