## Commonwealth v. Brenneman.

*Intoxicating liquor—Seizure in private garage—Search without warrant—Suppression of evidence—Constables—Right of arrest—Act of March 27, 1923.*

1. A constable may arrest, without a warrant, for the unlawful transportation of intoxicating liquor in his presence, where, on receiving information that defendant intended to procure and transport certain liquor, he followed defendant's car to the latter's private garage, and immediately after the car had stopped in the garage, he rushed in and arrested defendant, who was in the car and in possession of a bag found to contain liquor.

2. Under such circumstances, there is no unreasonable search and seizure within article i, section 8, of the Constitution of Pennsylvania, and defendant is not entitled to have the evidence suppressed.

*Arrest — Constables — Intoxicating liquor — Transportation — Act of March 27, 1923, P. L. 34.*

3. A constable may arrest without a warrant upon reasonable suspicion, founded on his own knowledge or information from others that a felony has been committed or such a breach of the peace as would probably result in a felony, but he may not arrest, without a warrant, for an ordinary misdemeanor, unless present at its commission.

Rule on district attorney for return of intoxicating liquor or its suppression as evidence. Q. S. Dauphin Co., Sept. Sess., 1926, No. 150.

*Metzger & Wickersham,* for rule; *Robert T. Fox,* District Attorney, contra.

Fox, J., Dec. 29, 1926.—This matter comes before us upon a rule upon Robert T. Fox, District Attorney of Dauphin County, to show cause why the alleged intoxicating liquor referred to in the petition should not be destroyed or suppressed as evidence in the criminal proceeding against James Brenneman. The petition for the rule in substance represents that, on Sept. 16, 1926, at 8 P. M., he was in his garage, in the Borough of Middletown, where his automobile was, and J. W. Doup, constable of the 3rd Ward of the said borough, together with Albert Slesser, rushed into said garage, without permission from the petitioner, entered the automobile then and there standing, and removed therefrom a container alleged to contain one gallon of moonshine liquor; that neither the said Doup or Slesser had any search warrant to search the said car, nor did they have any warrant to arrest the petitioner; that the said Doup and Slesser, without any authority or legal right so to do, confiscated the said liquor and took the said liquor to a justice of the peace in and for said borough and made an information against the said petitioner,

charging him with the transportation and possession of intoxicating liquor, which was subsequently served on the petitioner, and the petitioner was held for court.

An answer was filed to the rule by the district attorney which, in substance, avers that, on the evening of Sept. 16, 1926, the said Constable J. W. Doup, between 6.30 and 7 o'clock, heard the defendant endeavoring to get Norman Houser and John Hain to drive his automobile for him that evening, and later the said Doup was advised by Albert Slesser that the said James Brenneman had secured Raymond Coble and a boy by the name of Myers to drive his automobile for the purpose of getting a gallon of liquor, and that they had gone for it. Whereupon the said Doup, at about 8 P. M., hid on Vine Street, at the corner of Hoffman Avenue, waiting for the said James Brenneman to return with the intoxicating liquor to the garage of the defendant, saw the defendant's car proceeding on Race Street and then turn into Hoffman Street toward Vine, at which time he hurried down to the garage in order to apprehend him before the automobile entered the garage; that he was prevented from stopping the machine as it entered the garage because it cut in ahead of him. At the time, the garage doors were wide open and the car did not stop until it got into the garage, the constable immediately rushed into the garage and opened the left door into the rear of said automobile and threw a flashlight into the rear of said car, when he noticed a bag with something in it sitting on the floor between the feet of the said James Brenneman, who was sitting on the back seat of the car with the Myers boy; and that Raymond Coble was sitting at the wheel of the car. The said J. W. Doup then took the bag and its contents in the alley, where he opened it and pulled a gallon jug of intoxicating liquor out of the bag and then placed the said Brenneman under arrest upon a charge of unlawful possession and transportation of intoxicating liquor, and that they then proceeded to the office of the justice of the peace, where the constable made an information against the defendant, charging him with the unlawful possession and transportation of intoxicating liquor, for which he now stands indicted.

We have on file, also, an agreement of facts, in addition to the facts set out in the pleadings, which show that the garage of the defendant was a private one, standing in the rear of the lot upon which the defendant's house is built, and that the defendant kept his car in the garage, which was not used for any other purpose than storing some of his small tools; that when the said constable saw the car in motion on the street, it was two hundred feet distant from him; that the said constable did not have any permission to search the car, nor did James Brenneman tell him to make a search, nor did he order him from the garage, and that there is no evidence that the private garage of the defendant was at any time used for the unlawful sale of intoxicating liquor or for any business such as a store, shop, saloon, restaurant, hotel, boarding-house, warehouse or public garage.

The question before us is: Was the search for and the seizure of the alleged intoxicating liquor unlawful, and should the evidence of this possession and transportation by the defendant be suppressed at the trial of the cause?

Article 1, section 8, of the Constitution of Pennsylvania provides: "The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation, subscribed to by the affiant."

Commonwealth v. Brenneman.

This question is quite fully discussed in the case of Com. v. Rubin, 82 Pa. Superior Ct. 315, and, after citing a number of decisions, the court, at page 321, says:

"These decisions and many others that might be cited establish that the constitutional provision with which we are now dealing does not render unlawful all arrests without warrant; what it does forbid is 'unreasonable' arrests, searches and seizures, and whether an arrest without a warrant is unreasonable is to be determined according to the principles of the common law.

"The authority of a constable to arrest without a warrant upon reasonable suspicion, founded either on his own knowledge or the information of others, that a felony or such breach of the peace as would probably prove to be a felony has been committed cannot be questioned. It is equally well settled that he cannot arrest for an ordinary misdemeanor unless present at the commission of the offence. In some of the adjudicated cases it has been said that an officer may arrest upon reasonable suspicion of felony or for a breach of the peace committed in his presence, and this has no doubt led to the suggestion now made that the authority of an officer to arrest for a misdemeanor committed in his presence is confined to those cases in which the offence involves a breach of the peace. We find no decision of the Supreme Court of Pennsylvania which recognizes such a limitation upon the authority of an officer to arrest for a misdemeanor committed in his presence. In McCullough v. Com., supra, the opinion cited as authority in support of the conclusion there reached, 2 Hawkins Pleas of the Crown, chap. 10, § 34, and in that section we find it stated as among the common-law powers of the constable to arrest without a warrant: 'All suspicious persons that go abroad in the night and sleep by day, or resort to bawdy-houses, or keep suspicious company, and to suppress affrays.' 'By the original and inherent power in the constable, he may, for breach of the peace and some misdemeanors less than felony, imprison a person. The arrest, when the crime charged is not a felony, must be made while the crime is being actually committed in the presence of the officer.' "

And, on page 323, it is said: "The ninth section of the Act of March 27, 1923, P. L. 34, authorizes any officer to arrest without a warrant any person discovered in the act of transporting, in violation of this act, intoxicating liquor in any wagon, buggy, motor-vehicle . . . or other receptacle. Here was express legislative authority to arrest without a warrant an offender caught in the act of transporting intoxicating liquor for beverage purposes in violation of the Constitution of the United States and the statute of Pennsylvania. There was no doubt that the defendant had been discovered in the act of transporting liquor in violation of the statute. The statute did not authorize the officer to imprison the defendant, but required that he at once take him before a magistrate and make an information in due form, which the officer did in this case. The question, therefore, is: Are these provisions of the statute authorizing an arrest without a warrant invalid because in contravention of the constitutional provision?

"The offence was not a felony, but involved a violation of the Constitution of the United States and was a misdemeanor punishable by fine and imprisonment under the Pennsylvania statute. It consisted in the transportation of the liquor; and to hold that there could be no arrest without a warrant from a magistrate would necessarily give an opportunity for escaping from the jurisdiction; the very reason for which the common law authorized an arrest without a warrant in many minor offences. The offence was committed in the presence of the officer, which is the material question in arrests of this char-

Commonwealth v. Brenneman.

acter. There has been much discussion as to whether an officer must see or smell the liquor before he can lawfully arrest the person engaged in the transportation thereof. We do not deem these matters controlling. When an officer sees a bottle containing some liquid, he can only suspect that the contents are probably intoxicating liquor. If a bottle happens to break, he may be of opinion that it smells like intoxicating liquor. These are only circumstances which lead him to suspect that the substance transported is intoxicating liquor. Reasonable suspicion, probable cause for making the arrest, may just as well be founded upon information derived from others which gives the officer reasonable ground to believe, and actually causes him to believe, that liquor is then and there being transported in violation of law. When the officer believes, from his own observation or from information from sources so reliable that a prudent person, having due regard to the rights of others, would act thereon, and has reasonable and probable cause to believe that a vehicle is engaged in unlawful transportation in his presence, he may arrest, search and seize without a warrant."

The question here arises as to whether the search was unreasonable.

The answer avers that the said constable, on the particular evening, heard the defendant endeavoring to secure Norman Houser and John Hain to operate his automobile that evening, and later that he was advised by Albert Slesser that James Brenneman had secured Raymond Coble and a boy by the name of Myers to drive his automobile for the purpose of getting a gallon of liquor, and that they went for it. The constable secreted himself and awaited for and saw the defendant's automobile returning on the highway towards the garage, and that the defendant's car entered the garage before he could get there and stop the automobile on the public highway. We do not think that, in the light of the information the constable had as to the purpose of the journey of the defendant and his companions, his immediately following the automobile into the garage and seeing the defendant and his companions still in the car, made an unreasonable search of the car. The facts as set forth in the pleadings show that the defendant had in the car as it passed from the highway into the private garage a vessel of intoxicating liquor which he was unlawfully possessing and transporting and was violating the Constitution of the United States and the law of Pennsylvania, as the act of transporting had not yet ended, for the liquor was yet with the defendant in the automobile, where, of course, he did not intend to allow it to remain forever more. It would be unreasonable to say that when the automobile and the defendant in it with the intoxicating liquor had passed from the public highway, upon which it had been driven, into his garage, the constable, having then in his possession the information which he received from Slesser and which he obviously regarded as reliable, could not proceed any further until he had procured a search warrant, thereby giving the violator of the law a chance to secrete the intoxicating liquor and escape from arrest. It seems to us that it would be unreasonable to say that if one were picking the pocket of another on the street and the latter informed a nearby policeman, who at once followed in pursuit of the thief, and the latter would enter into his home, the officer could not follow and arrest the thief and regain the stolen property, but would have to stop at the threshold of the thief's house and go to a magistrate's office and procure a search warrant. The whole case hinges on the word "unreasonable," and we do not think this search and seizure had the elements of unreasonableness in it.

Wherefore, we are of the opinion that the rule should be discharged.

And now, Dec. 27, 1926, the rule is discharged, at the cost of the petitioner.

From Homer L. Kreider, Harrisburg, Pa.