## Commonwealth v. Ryan

*Franklin E. Barr*, assistant district attorney, and *Charles F. Kelley*, district attorney, for Commonwealth.

*William T. Connor* and *John P. Connelly*, for petitioner.

SMITH, P. J., and ALESSANDRONI, J., June 23, 1934.—The petition of Michael J. Ryan sets forth that he was the president of Girard Avenue Title & Trust Company, which was taken into possession by the Secretary of Banking on October 7, 1931; that at the time of closing of the bank defendant was the owner of a desk located in his private office in the bank, in which were contained certain canceled checks and personal property; that thereafter the Secretary of Banking and the district attorney, without any warrant or lawful authority, broke open the desk and seized the defendant's personal property; that at the time of seizure no indictment or charges had been made against the defendant; that most of said papers have been returned to the defendant but the Secretary of Banking and the district attorney are still withholding 26 of the defendant's personal checks, as well as certain personal writings and personal property. The petition concludes with a prayer that a rule be granted, directed to the Secretary of Banking and the district attorney, to show cause why an order should not issue against them to surrender to the defendant 26 personal checks described in the petition, as well as all other personal and private papers, and the district attorney be restrained from making use of any personal or private letter or writing of the defendant which has come into his possession as the result of the unlawful seizure.

Answers were filed on behalf of the Secretary of Banking and the district attorney, raising issues as to the ownership of the desk, the unlawful seizure, and the right of the defendant to have returned to him the 26 checks which were used in the perpetration of the crimes alleged. It is averred that the Secretary of Banking was justified in taking and retaining all papers, checks, etc., having a bearing on or connection with the affairs of the closed bank which are necessary for the prosecution of the indictments found against the defendant. It is prayed that the rule be discharged. The answer of the Secretary of Banking further sets forth that the desk of the defendant was examined by a party who used the key to the desk which was left by defendant in the possession of the

Secretary of Banking, and that many of the papers contained in the desk related solely to bank business.

Testimony was offered on behalf of defendant to establish the fact that the desk belonged to him and was opened by a representative from the district attorney's office with a key which was found in an open drawer of the desk. The assistant district attorney in question, however, stated of record that he had no recollection of opening the desk or of the checks being in the desk. Counsel pro and contra both stated that the only question arising was as to the right of ownership and possession of the desk and of the 26 checks.

Assuming for the purpose of this discussion that the desk in question is the property of the defendant, and it appearing that the checks in question were canceled and drawn on the account of Michael J. Ryan, two questions of law remain. The first is whether there was an unreasonable search and seizure contrary to the Constitution of Pennsylvania, and the second, whether defendant is entitled to the return of the checks even if the search and seizure was unreasonable.

The first question raised presents an interesting source of legal inquiry. No question of violation of the Federal Constitution regarding unreasonable search and seizure can properly be raised, for it has been decided that "The fourth and fifth amendments of the Constitution of the United States contain no restrictions on the powers of the states, but were intended to operate solely on the Federal government and the Federal courts: Brown v. New Jersey, 175 U. S. 172; Bolln v. Nebraska, 176 U. S. 83": Commonwealth v. Rubin, 82 Pa. Superior Ct. 315, 319.

Article I, sec. 8, of the State Constitution provides that "The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant."

A similar question arose in Commonwealth v. Street et al., 3 D. & C. 783. In that case, certain trucks and their contents were seized on a public highway without a warrant. The court held that the search and seizure was not unreasonable, using the following language (pp. 787, 788) : "The protection granted by the Constitution thus having its roots in revolutionary times and being a result of the colonists' experience with despotism, is not to be regarded lightly nor frittered away. On the other hand, while vital principles are and ought to be unchangeable, regard must be had to the fact that in their application to changing conditions the security and consequent happiness of the body politic must be protected against an academically rigid interpretation of theoretical rights which those who originally enunciated the doctrine would be the first to disavow."

The court reached this conclusion for the following reasons: (1) The term "unreasonable" showed an intent on the part of the framers of the Constitution to leave the definition as a term flexible, so as to meet the changing habits, conditions, and views of society. For instance, it would be impossible to obtain a search warrant for a fleeing automobile, but the right to search such vehicles must necessarily be deemed reasonable. (2) The constitutional provision as to searches and seizures is quite distinguishable in its application to individuals, their habitations, and business places, on the one hand, and to motor vehicles on the other, because the rights in the one case are entirely independent of government and in the other are derived wholly from the State.

Several additional reasons were advanced by the court which have no application here. We do find, however, that the desk in question was on the prem-

ises of the institution which was taken into possession by the Secretary of Banking and that the contents of the desk were left there by the defendant with the key in an open drawer freely available to the Secretary of Banking or his deputy in charge. It was the duty of the Secretary of Banking or his deputy immediately to examine all papers, documents, etc., relating to the business of the bank on the premises, and to take into his possession all documents of any kind which would assist him in the performance of his duty. No testimony was offered to rebut the statements made in the answers filed that the checks in question were pertinent as evidence in the prosecution of the indictments, and it is therefore obvious that the Secretary of Banking, in taking possession of the checks, acted in the full performance of duties imposed upon him by law. There was no difficulty in obtaining access to the desk, for the key had been left by the defendant where it would be readily available.

Under these circumstances, therefore, we find no hesitancy in concluding that the search and seizure was not unreasonable and was not in violation of the Constitution of Pennsylvania.

Assuming for the purposes of argument that the search and seizure was unreasonable, the petitioner would still not be entitled to have the rule made absolute. Proof of the commission of a crime, is admissible in evidence in Pennsylvania even though obtained as the result of an unlawful search and seizure. This rule has been firmly established not only in England but in the majority of our States, including our own. See cases cited in Commonwealth v. Street et al., supra, at page 795. This view is endorsed in 1 Greenleaf, Evidence, sec. 254a and in 4 Wigmore, Evidence, sec. 2183.

Our courts have repeatedly indicated the undeniable propriety and logic of this ruling, for it is difficult to show how the value of any evidence is affected by the manner or means by which it was obtained. As stated in Commonwealth v. Cressinger, 193 Pa. 326, 337: "The object of evidence is to get at the truth, and a trick which has no tendency to produce a confession except one in accordance with the truth is always admissible. Society and the criminal are at war, and capture by surprise, or ambush, or masked battery is as permissible in one case as in the other".

In Commonwealth v. Rubin, supra, at page 327, the court stated: "The court did not err in admitting in evidence the liquor and the testimony of the officer who seized it while in course of transportation. 'If the search warrant were illegal, or if the officer serving the warrant exceeded his authority, the party on whose complaint the warrant issued, or the officer, would be responsible for the wrong done; but this is no good reason for excluding the papers [lottery tickets] seized in evidence, if they were pertinent to the issue, as they unquestionably were. When papers are offered in evidence the court can take no notice how they were obtained, whether lawfully or unlawfully; nor would they form a collateral issue to determine that "question:" Com. v. Dana, 2 Metcalf (Mass.) 329; Stevison v. Earnest, 80 Ill. 513. This principle was reaffirmed in Com. v. Tibbets, 157 Mass. 519; Com. v. Acton, 165 Mass. 11; Com. v. Smith, 166 Mass. 370; People v. Mayen [188], (Cal.) [237], 205 Pacific 435; Chastang v. State, 83 Ala. 29; State v. Flynn, 36 N. H. 64; Com. v. Vigliotti (No. 1), 75 Pa. Superior Ct. 366; Com. v. Grasse, 80 Pa. Superior Ct. 480 and Adams v. New York, 192 U. S. 585. All the assignments of error are dismissed'."

In Commonwealth v. Schwartz, 82 Pa. Superior Ct. 369, 378, it was again stated as follows: "The principle contended for by the appellant has not been adopted as the law in this State. The same contention was advanced in Com. v. Vigliotti, 75 Pa. Superior Ct. 366, but was ruled adversely to the defendant. Judge Henderson there said: 'Conceding that the packages were taken from

the store and residence of the defendants without authority, the admissibility of the evidence is not affected by the illegality of the means through which it was obtained. The court will not suspend the conduct of a trial to enter into a collateral inquiry as to the means through which the evidence, otherwise competent, was obtained' (p. 378). The question has been considered most carefully and exhaustively by Judge Porter in Com. v. Rubin, supra, with the conclusion that the law in this State is contrary to the position contended for by the appellant. This view is in accord with Greenleaf on Evidence, Vol. 1, §254a, Wigmore on Evidence, 2d Ed. Vol. 4, sec. 2183-4 and many decisions in other states."

See also Commonwealth v. Holgate, 63 Pa. Superior Ct. 246, Commonwealth v. Vigliotti, 75 Pa. Superior Ct. 366, Commonwealth v. Grasse, 80 Pa. Superior Ct. 480, and Commonwealth v. Klein et al., 81 Pa. Superior Ct. 551.

For the reasons hereinbefore stated, we are of opinion that the rule should be discharged.

And now, to wit, June 23, 1934, the rule is discharged.

NOTE.—Subsequently, on October 19, 1934, the defendant was tried upon the indictments referred to in the foregoing opinion, and was acquitted.