## Commonwealth v. Butler

*Burritt L. Haag*, district attorney, for Commonwealth.
*A. Lipez*, for defendant.

HIPPLE, P. J., September 19, 1940.—On January 5, 1940, defendant was convicted before a justice of the peace in a summary proceeding and there was imposed upon him a fine of $100, together with costs of prosecution, upon the charge of having violated article XII, sec. 1207, of The Game Law of June 3, 1937, P. L. 1225, 34 PS §1311.1207, in that on December 15, 1939, he wilfully and unlawfully resisted inspection or arrest and interfered with officers of the Commonwealth in the performance of their duties under the provisions of The Game Law.

The offense of resisting inspection or arrest and interfering with officers of the Commonwealth in the performance of their duties arose out of an attempt made by

a State motor policeman and two game protectors to search a car in which defendant was riding on the last day of the deer season of 1939 and to examine and inspect the firearm or firearms which were in the car.

An appeal from the conviction was allowed because: (1) Defendant alleged that the game protectors were not in fact in uniform, nor did they advise defendant of the purpose of their search of the automobile or inspection of the firearms in question in violation of article II, sec. 214, paragraphs (*h*) and (*i*), of The Game Law; (2) that the evidence showed that defendant did reasonably comply with the provisions of The Game Law; (3) that the evidence did not show beyond a reasonable doubt that defendant was guilty; and (4) that The Game Law, supra, art. II, sec. 214, pars. (*h*) and (*i*), contravenes article I, sec. 8, of the Constitution of Pennsylvania, and the Fourth Amendment to the Constitution of the United States with relation to unreasonable searches and seizures.

Section 1207 of The Game Law provides:

"Any person who by force, menace, threat, or in any manner resists inspection or arrest for violation of any of the provisions of this act, or refuses to go with an officer after an arrest has been made, or interferes with any officer of the Commonwealth in the performance of his duty under the provisions of this act, shall, upon conviction, be sentenced to pay a fine of one hundred dollars and costs of prosecution, and, in default of the payment of such fine and costs, shall be imprisoned one day for each dollar of fine and costs."

Section 214, paragraphs (*h*) and (*i*), of The Game Law vests in the lawfully qualified representatives of the Game Commission the right

"(*h*) to stop and inspect or search at any time, without warrant, any vehicle or conveyance, and its occupants or contents, any time or place within this Commonwealth: Provided, however, Such officer shall be in uniform and display his badge or other insignia of identifica-

tion and shall state to the person in charge of said vehicle or conveyance the purpose of the inspection or search;

"(*i*) To inspect or search at any time, without warrant, and examine any clothing worn by any person, or any boat, conveyance or vehicle of any type or kind, whether attached or detached to another conveyance or vehicle, or any game bag, game coat, or other receptacle for game, when such officer has made known his official identity and the cause for such inspection or search . . ."

Section 806 of The Game Law provides in part as follows (the omitted portion not being necessary in the consideration of this case) :

"Except as otherwise provided by law, it is unlawful for any person to have in his possession a loaded rifle or loaded shotgun, or a rifle or shotgun from the magazine of which all shells and cartridges have not been removed, in or on any vehicle or conveyance, or its attachments, while standing upon or along, or being driven upon or along, any public highway, or a highway open to use or used by the public, within this Commonwealth . . ."

The purpose of the search or inspection was to ascertain whether any loaded firearms were in the automobile in question, in violation of section 806 of The Game Law and also whether any illegally killed deer were being transported.

From the testimony taken at the hearing before the court, it appears that on the afternoon of December 15, 1939, J. W. Summerson, a member of the State Motor Police, together with Miles Reeder, District Game Protector of Clinton County, and Robert Farwell, a special game protector, were engaged in inspecting cars and firearms in Beech Creek Township, Clinton County, for the purpose of ascertaining whether The Game Law had been or was being violated. The motor patrolman, who was in uniform, stopped a Ford automobile in which defendant was riding, the automobile being operated by defendant's brother, Dan Butler. After the car was stopped, the game

protectors, Farwell and Reeder, walked to the car and asked the occupants to exhibit their rifles or guns. The game protectors had no special uniform, were dressed in the ordinary type of hunting clothes but had attached to their clothes their official badges containing the words "Pennsylvania Game Commission."

Defendant denied that he knew either of the game protectors, although on the preceding day, December 14, 1939, in the same section of Clinton County, which was a wooded section and deer hunting territory about four or five miles from Beech Creek Borough and on the same road, the two game protectors met defendant and his brother in the same automobile, which was either stopped by the game protectors or had been stopped on the road, identified themselves to defendant and his brother, talked to both of them, and at that time inspected and examined the firearms or rifles which defendant and his brother had in the car.

There is no doubt but that defendant knew that both Reeder and Farwell were game protectors, duly authorized to enforce The Game Law of Pennsylvania on December 15, 1939.

After some argument, the firearm of Dan Butler was inspected and an attempt was made to search the car and examine the firearm or rifle of defendant. He refused to permit the examination of the car or inspection of his firearm, although the motor patrolman was in uniform and defendant knew that Reeder and Farwell were authorized game protectors. In his effort to prevent such inspection and search, defendant kicked at the motor patrolman, at which time Reeder took hold of his foot, when defendant struck at Reeder three or four times, stating that the officers had no right to search the car without a search warrant.

Naturally, the refusal of defendant to permit such search and inspection, although he had not objected thereto the previous day, and his resisting the lawful attempt of the officers in that respect would arouse suspi-

cion that defendant was attempting to conceal something which was illegal, and the officers were justified in using such force as was necessary, in view of the refusal and resistance of defendant, to enable them to proceed with the search and inspection. Defendant did in fact, by force and in other ways, resist inspection and obstruct the search of the automobile in violation of section 1207 of The Game Law, and was properly convicted of that offense.

Defendant did not reasonably comply with the provisions of The Game Law relating to search and inspection, even though a search of the car and an inspection of his firearm or rifle was subsequently made and no violations of The Game Law were discovered, because he resisted both the search and inspection which the officers under the provisions of The Game Law had the right to make, and there is no reasonable doubt as to the guilt of defendant.

Any person familiar with the hunting of deer during the open season knows that it is impossible for a game protector to properly enforce The Game Law in the areas where deer are hunted, if the game protector is compelled to wear a special uniform which sets him apart from persons engaged in hunting. Any hunter knows that the game protectors are clothed in substantially the same type of hunting clothing which is worn by the hunters themselves, but the game protectors do have with them the badge or insignia of their office, which is worn upon their clothing and can be readily seen by any person, particularly those who come in close contact with them, as defendant did. Defendant actually knew that Reeder and Farwell were game protectors acting in the line of their duty, because they had identified themselves to him the previous day, and had inspected his firearm and rifle.

Therefore, we conclude that Farwell and Reeder reasonably complied with the provisions of section 214, paras. (h) and (i), when they attempted to inspect the firearm of defendant and the car in which he was riding,

and defendant had no right to resist or attempt to prevent such inspection or search.

As was held in Commonwealth v. Rubin, 82 Pa. Superior Ct. 315, 319, the fourth amendment to the Constitution of the United States contains no restrictions on the powers of the States, but was intended to operate solely on the Federal Government and Federal courts, citing Brown v. New Jersey, 175 U. S. 172, and Bolln v. Nebraska, 176 U. S. 83. This ruling was followed in Commonwealth v. Ryan, 21 D. & C. 457.

Therefore, consideration need only be given to article I, sec. 8, of the Constitution of Pennsylvania, which provides as follows:

"The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant."

It will be noted that the protection there given is against "unreasonable searches and seizures" and not against all searches and seizures. In our opinion, section 214, paras. (h) and (i), of The Game Law do not contravene the provisions of the Constitution of Pennsylvania against "unreasonable searches and seizures". We adopt the reasoning in that respect in the case of Commonwealth v. Street et al., 3 D. & C. 783, in which the following language was used (p. 787):

"The protection granted by the Constitution thus having its roots in revolutionary times and being a result of the colonists' experience with despotism, is not to be regarded lightly nor frittered away. On the other hand, while vital principles are and ought to be unchangeable, regard must be had to the fact that in their application to changing conditions the security and consequent happiness of the body politic must be protected against an academically rigid interpretation of theoretical rights which those who originally enunciated the doctrine would be the first to disavow."

The court reached this conclusion for the following reasons:

(1) The term "unreasonable" showed an intent on the part of the framers of the Constitution to leave the definition as a term flexible, so as to meet the changing habits, conditions, and views of society. For instance, it would be impossible to obtain a search warrant for a fleeing automobile, but the right to search such vehicles must necessarily be deemed reasonable.

(2) The constitutional provision as to searches and seizures is quite distinguishable in its application to individuals, their habitations and business places, on the one hand, and to motor vehicles on the other, because the rights in the one case are entirely independent of government and in the other are derived wholly from the State.

While in the case of Commonwealth v. Street et al., supra, the facts are different, yet the reasoning with relation to unreasonable searches and seizures is applicable here, and we agree that "the search of an automobile without a warrant is not 'unreasonable' within the meaning of the Constitution, although a similar search of a stationary or permanent habitation might, under otherwise identical circumstances, be wholly unreasonable".

There is another aspect of the case to which reference should be made. All game, including of course, the deer herd in Pennsylvania, is the property of the Commonwealth, and, acting through the legislature, the Commonwealth has the sole right to preserve and protect the same and regulate the method, time, and manner of hunting and killing game, and to enact safety regulations with regard to the use and transportation of firearms. It is well known that many accidents occur through the transportation or carrying of loaded firearms in automobiles, and the legislature had the right to provide proper safety regulations and to secure their enforcement. The inspection or examination of an automobile or a firearm being carried or transported therein is not an unreasonable search or seizure.

No person in the State of Pennsylvania has the natural right to hunt game. It is a right granted to a person by the Commonwealth by the issuing of a license therefor. It is not a right independent of government but is "derived wholly from the State". Such licensee must comply with The Game Law, the provisions of which he is presumed to know, with relation to hunting game when the Commonwealth grants him a license or right so to do. The license or right to hunt imposes on the licensee the duty to permit an inspection of his automobile, or his firearm, by duly-authorized game protectors under the circumstances prescribed in The Game Law. Otherwise, the enforcement of The Game Law would be rendered most difficult, if not impossible.

For the reasons above stated, the conviction of defendant is affirmed and the following order is made:

### Decree

And now, September 19, 1940, defendant, Hugh Butler, is hereby convicted of the offense of unlawfully resisting inspection or arrest and interfering with officers of the Commonwealth in the performance of their duties as provided in article XII, sec. 1207, of The Game Law of June 3, 1937, P. L. 1225, and is hereby sentenced to pay a fine of $100, together with the costs of prosecution, and in default of payment thereof to undergo imprisonment in the Common Jail of Clinton County for a period of one day for each dollar of said fine and costs.