## Commonwealth v. Prussia et al.

Before McCann, P. J., McKenrick and Griffith, JJ.

*Joseph H. Holzman* and *Fred J. Fees*, for Commonwealth.

*Smorto & Creany* and *John W. Taylor*, for defendants.

GRIFFITH, J., August 25, 1953.—From the testimony taken in this case it appears that one of the county detectives obtained a search warrant on Sunday, December 14, 1952, and on the same date, together with his assistants and two agents of the Pennsylvania Liquor Control Board, entered certain clubs of which the defendants were stewards, and while there observed certain slot machines in operation and seized the same. The next day informations were filed charging defendants with setting up and establishing slot machines for gambling purposes. Defendants waived hearings and posted bonds for their appearances in court. Each of the defendants moved for rules to quash the search warrants and informations and suppress the evidence. Rules were issued on the district attorney to this effect and answers filed. Before the disposition of the rules, bills were presented to the grand jury and indictments found against defendants, whereupon each of them moved to quash the indictments on the ground that they were prematurely found.

Defendants contend that the service of each of the search warrants was in violation of the Act of 1705, 1 Sm. L. 25, sec. 4, 44 PS §1, which provides as follows:

"No person or persons, upon the first day of the week, shall serve or execute, or cause to be served or executed, any writ, precept, warrant, order, judgment or decree, except in case of treason, felony or breach of the peace; but the serving of any such writ, precept, warrant, order, judgment or decree shall be void, to

all intents and purposes whatsoever; and the person or persons so serving or executing the same, shall be as liable to the suit of the party grieved, and to answer damages to him for doing thereof, as if he or they had done the same without any writ, precept, warrant or order, judgment or decree at all."

Defendants call our attention to the cases of Commonwealth v. Fannasy, 30 D. & C. 410, and Commonwealth v. McQuaid, 45 D. & C. 700, both decided by the Court of Common Pleas of Dauphin County, in which indictments were quashed for the reason that the evidence required to sustain the indictments was obtained by virtue of search warrants issued on Sunday, in violation of the Act of 1705, supra. These cases were decided on the theory that the operation of slot machines for gambling purposes is not a breach of the peace. It appears, however, that the Court of Dauphin County has recently changed its position in this regard. In the case of Commonwealth v. Magaro, 64 Dauphin 63 (1953), that court found that the service and execution of a search warrant on Sunday for the seizure of slot machines was legally justified and that the operation of slot machines for gambling purposes is a breach of the peace because, even though the machines were set up and operated in the premises of a private club, their operation tends to corrupt public morals and the decorum, peace and good order of the community. In its opinion in that case the Dauphin County Court examined the English statute of 29 Charles II, c. 7, s. 6, called the "Sunday Observance Act of 1667" which uses almost the identical language of our Act of 1705, supra. The court then examined some of the English cases decided since the passage of the Act of 1667 and found that that act had been interpreted to mean that the exception referred to therein extended to all indictable offenses and is not restricted to treason and felony and such misdemeanors as in-

volve an actual breach of the peace by violence or boisterous disturbance. This court also called attention to Williamson v. United States, 207 U. S. 425 (1908), wherein the Supreme Court of the United States considered article I, sec. 6, clause 1, of the Constitution of the United States, which reads in part as follows:

"The Senators and Representatives . . . shall in all cases, except treason, felony and breach of the peace, be privileged from arrest during their attendance at the session of their respective Houses, and in going to and returning from the same . . .".

In that case a member of Congress was charged with a crime not amounting to a felony and contended that the constitutional exception "breach of the peace" meant only actual breaches of the peace involving violence or public disturbance. However, the Supreme Court in its opinion said:

"Since from the foregoing it follows that the terms treason, felony and breach of the peace, as used in the constitutional provision relied upon, excepts from the operation of the privilege all criminal offenses, the conclusion results that the claim of prvilege of exemption from arrest and sentence was without merit . . .".

The lower courts in this Commonwealth have come to the same conclusion in interpreting the exception contained in article II, sec. 15, of the Pennsylvania Constitution of 1873, which grants privilege from arrest to members of the General Assembly, "in all cases, except treason, felony, violation of their oath of office, and breach or surety of the peace . . .".

Apparently the court in the earlier Dauphin County cases fell into error by confusing the rule in cases where a violation of the Sunday observance laws was charged, which were only offenses because they occurred on Sunday, with the rule in cases where the

act itself was unlawful regardless of the day on which it occurred.

In the present case, we need not determine what the rule should be where one is served on Sunday not for a present, open and continuing violation of the law, as we have here, but for a past and secret misdemeanor. See Commonwealth v. Overton, 42 Pa. C. C. 446.

The specific common-law offense known as "breach of the peace" requires a disturbance of the public peace or tranquility enjoyed by the citizens of a community. 11 C. J. S. 817; 8 Am. Jur. 834, §3, Breach of Peace. The offenses charged in these bills of indictment are not, as we see it, breaches of the peace in that sense. These offenses are, however, breaches of the peace within the meaning of the Act of 1705, supra; article I, sec. 6, clause 1, of the Constitution of the United States, and article II, sec. 15, of the Constitution of Pennsylvania.

We are satisfied that it was not the purpose of the Act of 1705 to grant immunity to quiet and peaceful gamblers, that is, those who are careful not to create any public disturbance or commit any treason or felony.

We are satisfied that the search warrants in these cases may not be quashed as being a violation of the Act of 1705.

Even though we had been constrained to quash the search warrants in these cases as being violative of the Act of 1705, nevertheless we could not sustain defendants' motions to suppress the evidence and quash the information and indictments. It has long been the rule in Pennsylvania that the admissibility of evidence is in no way affected by the illegality of the means through which it has been obtained: Commonwealth v. Agoston, 364 Pa. 464; Commonwealth v. Dabbiero, 290 Pa. 174, affirming 89 Pa. Superior Ct. 435; Commonwealth v. Montanero, 173 Pa. Superior Ct. 133; Com-

monwealth v. Dugan et al., 143 Pa. Superior Ct. 383; Commonwealth v. Schwartz, 82 Pa. Superior Ct. 369; Commonwealth v. Rubin, 82 Pa. Superior Ct. 315.

Defendants call attention to the fact that these cases were primarily concerned with searches and seizures which were illegal by reason of the fact that they violated the fourth amendment of the Constitution of the United States or article I, sec. 8, of the Constitution of Pennsylvania, prohibiting unreasonable searches and seizures or the fifth amendment of the Constitution of the United States, providing that no one shall be compelled to be a witness against himself. We are satisfied, however, of the validity of the rule announced in these cases, regardless of the reason for the illegality of the search and seizure.

In Commonwealth v. Agoston, supra, the court quoted 8 Wigmore on Evidence, (3rd ed.), sec. 2183, as follows:

"It has long been established that the admissibility of evidence is not affected by the illegality of the means through which the party has been enabled to obtain the evidence."

In Commonwealth v. Dugan, supra, the court said:

"Moreover, in this State it is recognized that proof of the commission of the crime is admissible in evidence even though obtained as the result of an unlawful search and seizure."

In Commonwealth v. Rubin, supra, we find the following:

" 'If the search warrant were illegal . . . the officer . . . would be responsible for the wrong done; but this is no good reason for excluding the papers [lottery tickets] seized in evidence . . .' ".

Likewise in Commonwealth v. Schwartz, supra, the court quoted from State v. Stoffels, 89 Minn. 205, 94 N. W. 675, as follows:

76

" 'There is a clear distinction between a man's private papers which are neither the subject of crime nor the means of perpetrating it and stolen property, implements of gaming and other property kept and used for an unlawful purpose . . .' ".

The opinion of the Superior Court continued:

"If the defendant's civil or constitutional rights have been infringed by the manner of their seizure, he has his remedy, civil or criminal as the case may be, against the offender. But the wrong done him as an individual, in this respect, if any, is not rectified by committing another wrong against the public; the injury to his constitutional rights is not vindicated by freeing him of a charge of which he is guilty and handing him back the articles which he has no legal right to possess, in order that he may again violate the laws of the Commonwealth."

It is apparent from the language in the opinions of the cases cited above that evidence obtained as the result of an illegal search and seizure is admissible. If such evidence is admissible even though obtained by a violation of a constitutional provision surely it would not be rendered inadmissible because obtained by a violation of a legislative provision.

It will be noted that our Act of 1705 provides that:

"The *serving* of any such . . . warrant . . . shall be void, to all intents and purposes whatsoever . . ." (Italics supplied).

Hence it is merely the "serving" of the warrant which is void and not all proceedings taken thereunder. Had the Pennsylvania Legislature sought to abrogate the common law and the law of this State under which illegally seized evidence is nevertheless admissible, language could have readily been found to so provide. For example, a Maryland statute (section 5 of article 35 of the Maryland Code) contains the following language:

"No evidence in the trial of misdemeanors shall be deemed admissible where the same shall have been procured by, through, or in consequence of any illegal search or seizure . . ."

And the North Carolina statute provides that:

". . . no facts discovered . . . without a legal search warrant . . . shall be competent as evidence in the trial of any action": Vol. 1 C, General Statutes of North Carolina, §15-27.

Even though the evidence in these cases had been seized illegally we would, nevertheless, refuse to suppress it or to quash the informations and indictments based thereon.

In the testimony which was taken on the rules, the arresting officers testified that the search warrants in these cases were not used but that entrance was gained by the officers of the Pennsylvania Liquor Control Board and that the county detectives followed them into the premises through open doors. That they saw the slot machines in use and thereupon seized them as authorized by the Act of March 31, 1860, P. L. 382, sec. 60, 18 PS §1445, which permits the seizure of devices *used* for gambling without warrant. However, the officers made a return to the magistrate on the search warrants stating that the machines were seized under the authority of the same. Defendants contend that the return on the search warrants may not be impeached, citing Holly v. Travis, 267 Pa. 136. Since we have determined that the issuance and the service of the search warrants were not illegal, and that even though they were the evidence could not be suppressed or the informations and indictments quashed, the question as to whether the returns to the search warrants may be contradicted need not be discussed.

The indictments may not be quashed because they were prematurely found. It is true that defendants' rules were pending and undisposed of at the time the

78

indictments were presented to the grand jury.  However, no requests to stay proceedings pending the outcome of the rules were made.

We, therefore, enter the following

*Decree*

And now, August 25, 1953, defendants' rules to quash the search warrants and the informations and to suppress the evidence are discharged and defendants' motions to quash the indictments are dismissed.