# Commonwealth *v.* One Box Benedictine, etc., Appellant.

*Criminal law — Intoxicating liquors — Liquors — Possession — Search warrant—Perjury — Magistrate — Malfeasance in office — Trespasser — Dwelling house — Affidavit — Knowledge — Belief — Confiscation—Evidence—Burden of proof—Act of March 27, 1923, P. L. 34.*

1. In a proceeding by the Commonwealth to confiscate liquor taken on premises which in the petition are alleged not to be a dwelling house, the burden of proof is on the Commonwealth to establish the essential averments of the petition.

2. If the Commonwealth shows that the premises where the liquor was found, while a dwelling house, partook largely of the nature of a saloon and approached closely to that of a disorderly house, the burden shifts to the claimant of the liquor to show that the building was a "private dwelling occupied as such only" and that he had been in the lawful possession of the liquor.

3. A private dwelling, as the term is used in the Snyder Act of March 27, 1923, P. L. 34, means not only a dwelling in the ordinary sense, but includes as well the rooms used and occupied as a residence in an apartment house, hotel or boarding house wherein intoxicating liquor for beverage purposes was possessed at the time the act went into effect, or such place or dwelling later acquired by lease, purchase or otherwise, to which liquor, possessed at the time the act went into effect, may be lawfully transferred under a permit from the national government.

4. No warrant may be issued to search such private dwelling, unless it is being used for the unlawful sale of intoxicating liquors, or unless it is in part used for some business purposes such as a store, shop, saloon, restaurant, hotel, boarding house, warehouse or public garage.

5. The affidavit on which a personal warrant may issue for search of a "private dwelling house only" must be based on knowledge of the affiant or belief founded on reliable information that the house is being used for the unlawful sale of liquor, based on either direct or circumstantial evidence; mere suspicion is not enough.

6. The magistrate who issues such warrant must investigate whether that fact,—"sale,"—is present.

7. To swear falsely to an affidavit for a search warrant causes the affiant to be guilty of perjury.

8. A magistrate who issues a warrant to search a building used as a private dwelling only without a proper affidavit, or after an investigation, if one is had, without it appearing thereby that a sale had been made, is guilty of malfeasance in office.

9. An officer who executes such a warrant, knowing that it has been wrongfully issued, is a trespasser.

10. The fact that liquor may be discovered through a search warrant unlawfully issued will not condone nor can it be used in justification of the crime committed to procure the search warrant.

11. A dwelling house used in part for business purposes loses the protection of the act.

12. If the public generally visits the place, coming and going, and the building exhibits the external appearance of a saloon, such use takes the building out of the protected class, not because of the quantity of liquor possessed, or the manner of its possession, but because of the use that is made of a part of the building.

13. If a property is in fact a private dwelling occupied as such, and "used as a dwelling house only," the mere fact that persons occasionally had come from it in intoxicated conditions, would not in itself be evidence that liquor was unlawfully possessed or used in such house; nor would the further fact that intoxicating liquors in large quantities were kept in such house; nor that liquor was secreted therein.

14. The concurrence of the three elements of possession, use and secrecy is not sufficient to show the unlawful possession or use of intoxicating liquor in such house, or to condemn the place as a dwelling house used in part as a saloon.

Argued April 11, 1927. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 201, Jan. T., 1927, by defendant, from judgment of Superior Court, Oct. T., 1926, No. 158, reversing order of Q. S. Phila. Co., May T., 1925, No. 151, dismissing petition to confiscate intoxicating liquor, in case of Commonwealth v. One Box Containing One Quart Bottle of Benedictine, etc., in the possession of Veto Vedetto. Affirmed.

Appeal from Superior Court: see 89 Pa. Superior Ct. 467.

The opinion of the Supreme Court states the facts.

Order of quarter sessions reversed. Defendant appealed.

*Error assigned,* inter alia, was order, quoting record.

*Harry A. Gorson,* for appellant.—The Superior Court erred in entertaining the evidence regarding arrival and departure of persons who appeared to be staggering, and who made frequent visits in taxicabs at all hours of the night.

The testimony indicates the original search warrant was unlawful and illegal; and that there was no ground for the issuing of a warrant; the entry by the police officers was that of trespassers, and all subsequent proceedings based on such unlawful entry were invalid: Brock v. U. S., 12 Fed. 370; Lobosco v. U. S., 11 Fed. 892; Garske v. U. S., 1 Fed. 620.

The term dwelling house includes not only the premises actually used as such but also such outbuildings as were within the curtilage or courtyard surrounding the mansion house: Swift & Givins App., 111 Pa. 516; Damon v. R. R., 119 Pa. 287; U. S. v. Slusser, 270 Fed. 818.

*Joseph K. Willing,* Assistant District Attorney, with him *Charles Edwin Fox,* District Attorney, for appellee.—The act states that the private dwelling must be a "bona fide" private dwelling, that if it is a bona fide private dwelling it must be occupied and used as a dwelling only.

Whether or not there is "probable cause" in a given set of facts is a question of law; whether or not there are or were facts is a question for the jury: McCarty v. DeArmit, 99 Pa. 63.

The latest word on search warrants, private dwellings and the return of intoxicating liquors seized upon such search warrants, is contained in Com. v. Scanlon, 84 Pa. Superior Ct. 569.

The burden of proof to establish the lawful possession of intoxicating liquor in one's private dwelling, or any place else, is upon the claimant.

OPINION BY MR. JUSTICE KEPHART, May 16, 1927:

This proceeding in the court below was for the confiscation of contraband liquor and was not a prosecution against an individual. The Commonwealth, through the district attorney of Philadelphia County, petitioned the court of quarter sessions for authority to proceed against and forfeit a large quantity of beer of high alcoholic content, several barrels of whiskey, a large quantity of champagne, and other liquors, seized by Philadelphia police officers in a house on the west side of Wissahickon Avenue. The court of quarter sessions refused to make the order, the Superior Court reversed and this appeal followed.

The petition for confiscation averred the property seized was unlawfully used and possessed in violation of the Act of March 27, 1923, commonly known as the Snyder Act, and that no permit, as defined by the National Prohibition Act, had been issued to any one for the possession of said liquor. The answer denied the articles seized were unlawfully held and possessed, averred the place searched was a private dwelling, and that the seizure was under a search warrant unlawfully issued.

When the matter came on for hearing, the burden lay on the Commonwealth to establish the essential averments contained in the petition. Many witnesses were called to show the character of the place when the seizure was made, and the manner and method under which it was conducted, all such events occurring prior to the raid of the officers. Appellant contends that the Commonwealth's own case shows the premises to be a private dwelling and the search an unlawful one. The inquiry arises as to what is a "private dwelling" which,

under the Snyder Act, is, immune from search unless there is a sale of liquor.

Section 2, paragraph (d), broadens the ordinary definition of a private dwelling. It was interpreted by this court in Com. v. Berdenella, 288 Pa. 510, 515. A private dwelling means not only a dwelling in the ordinary sense but includes as well the rooms used and occupied as a residence in an apartment house, hotel, or boarding house, wherein intoxicating liquor for beverage purposes was possessed at the time the act went into effect, or such place or dwelling later acquired by lease, purchase or otherwise, to which liquor, possessed at the time the act went into effect, may be lawfully transported under the Snyder Act under a permit from the national government. The act does not attempt to limit the kind of a building that may be used as a dwelling, but makes a distinction as to uses of such places. The term thus includes: (1) A private dwelling house used as dwelling house only; (2) A dwelling in a building used as an apartment, hotel or boarding house; (3) A dwelling used in part for some business place such as a store, shop, saloon, restaurant, boarding house, warehouse or public garage. To all dwellings, section 4 of the act applies. It reads: "It shall not be unlawful, however, to possess intoxicating liquor for beverage purposes in one's bona fide private dwelling while the same is occupied and used by him as his dwelling only, provided such liquor was lawfully acquired prior to the passage of this act."

The act gives the right to search for contraband liquor,—that is, liquor bought in violation of the act since prohibition went into effect, or any liquor sold in violation of the act. The limitation on the right to search is general as to all places and specific as to others. Generally, the search warrant shall not issue unless probable cause for its issuance be first made to appear. That is, it must be reasonably certain, either from personal knowledge of the one procuring the warrant, or informa-

tion from a reliable source, that the law has been violated. It must not be founded on suspicion, but upon personal knowledge or belief founded on reliable information. The magistrate issuing the warrant must be satisfied that probable cause exists.

As to private dwelling houses, a further limitation on right to search is added. Section 8 of the act reads: "No search warrant shall issue to search any private dwelling occupied as such, unless it is being used for the unlawful sale of intoxicating liquor, or unless it is in part used for some business purpose, such as store, shop, saloon, restaurant, hotel, boarding house, warehouse, or public garage."

When a building is "a private dwelling occupied as such" or used as a "private dwelling house only," it is protected against a search warrant unless "the private dwelling house is being used [like a 'speak easy'] for the unlawful sale of intoxicating liquor." To search a private dwelling for intoxicating liquor, in addition to the general precautions necessary before issuance of a search warrant, the affiant must know that the dwelling house "is being used for the unlawful sale of intoxicating liquors." The language is plain and mandatory. The search warrant cannot issue unless the "private dwelling" is used for unlawful sale. This fact must be known by the person who makes the affidavit, either by direct or circumstantial evidence. Moreover, the magistrate who issues the warrant has the duty of investigating whether that fact,—"sale,"—is present. This may be found by the same kind of evidence that caused the warrant to issue. To swear falsely to an affidavit for a search warrant causes the affiant to be guilty of perjury. A magistrate who issues a warrant to search a building used as a private dwelling only without probable cause on a proper affidavit, or, after an investigation, if one is had, without it thereby appearing that a sale had been made, as we said above, is guilty of malfeasance in office, and the officer who executes such

a warrant, knowing that it has been wrongfully issued, is a trespasser. All such may be prosecuted criminally. This is part of the security placed about a "private dwelling house occupied as such." The fact that liquor may be discovered through a search warrant unlawfully issued will not condone nor can it be used in justification of the crime committed in procuring the search warrant.

But all dwelling houses are not entitled to this protection. A dwelling house used in part for business purposes loses its "sanctuary" aspect. Those mentioned in the third class above cannot claim its benefit. The act reads: "unless it [the private dwelling] is in part used for some business purpose such as a store, shop, saloon, restaurant, hotel, boarding house, warehouse, or public garage." It is the use of the building for public purposes that takes from it the protection of the act. But the general limitation as to issuance of search warrants still applies.

The use made of such premises, being of a public nature, can be easily and readily ascertained. The "dwelling house" must be used in part for business purposes. It is not necessary that a sign should label the use as a store, etc. If the place possesses the characteristics of the business mentioned, it is enough. A building may have all the outward appearances of a dwelling and be in part a fully equipped restaurant, or it may have all the essentials surrounding a saloon. This is evidenced by the conduct of the public generally in visiting the place, coming and going, exhibiting some of the external appearances of what is usually purchased in saloons. Such use takes the building out of the protected class, not because of the quantity of liquor held, or the manner of its possession, but because of the use that is made of a part of the dwelling. In such cases, the affiant, in applying for a search warrant, must aver an unlawful possession of liquor and such public use of the premises.

The evidence in this case as to the use is sufficient to show that the dwelling was conducted in part as a

saloon. Eight or nine officers testified that day after day, continuously, they have seen many people go in and out of the place. This took place at night as well as day. They came on foot, or in taxis and automobiles. The parties would enter the house, remain only a short time and leave, many staggering drunk. This kept up until the early hours of the morning. Men would go into the house sober and come out drunk, "singing and hollering." It continued for a period of time. An officer seeking a search warrant would be justified in treating a place of this sort,—from the frequent large numbers of visitors and the repetition of drunken occurrences,—as a dwelling house used, in part at least, as a saloon. He would also be justified, upon the same evidence, in believing that liquor was illegally possessed and used on the premises. When this house was actually searched, the liquor was found in sub-cellars under the house.

If appellant's property was a "private dwelling occupied as such" and "used as a dwelling house only," the mere fact that persons occasionally come from it in an intoxicated condition would not, in itself, be evidence that liquor was unlawfully possessed or used in such house; nor would the further fact that intoxicating liquors in large quantities were kept in such house; nor that liquor was secreted in the house. As to the latter, it is not necessary for the owner to advertise his possessions, or place the liquor in a convenient place where it may be taken by designing servants or burglars; neither will the combination of the three elements above mentioned, possession, use and secrecy, be sufficient to show the unlawful possession or use of intoxicating liquor in such house, or to condemn the place as a dwelling house used in part as a saloon. If liquor may be lawfully possessed in a dwelling house, then, of necessity, what has just been described are the natural consequences of such possession. Of course, there may be other circumstances in addition to those we have de-

scribed, which, added to the above, would materially alter this conclusion.

The evidence, however, shows that the conduct of this place approached closely that of a disorderly house. When the Commonwealth submitted this evidence, with the possession of intoxicating liquor admitted, then, under the Snyder Act, the burden shifted to the defendant to show that the building was a "private dwelling occupied as such only," and that he was lawfully in possession of the liquor. This he could do by showing the liquor was procured prior to the passage of the act; that it was in his possession in the building at that time; that it had been moved there from another building or storage house under a federal permit; or that the premises were used as a "private dwelling only." He could have rebutted the inference of unlawful use by testimony that he made no sale, and that, if persons were seen coming out of the house drunk, it was not from liquor unlawfully furnished to them by him. The Commonwealth offered no direct evidence of unlawful use and rested on the fact that, having shown all the circumstances leading up to the raid, and having found liquor in the possession of the defendant, the act cast on appellant the burden of showing he acquired it lawfully. Appellant did not produce either the search warrant, the affidavit for the search warrant, the magistrate who heard the evidence on which it was issued, the witnesses who testified before the magistrate, or any evidence to show the place was conducted as a "private dwelling only," or that the liquor had been lawfully acquired. He rested solely on the theory that the Commonwealth proved the property a "dwelling house only." On the facts above described, the Commonwealth could not be taken to admit that the house was a dwelling within the protection of the act when the evidence disclosed the contrary. In admitting that the building was a private dwelling, it was not admitted that it was not used partly as a saloon.

The Superior Court ordered the liquor destroyed and under the evidence that was the only thing it could do.

The decree of the Superior Court is affirmed and the record is remitted to the court of quarter sessions with directions to enter a decree declaring the goods forfeited in accordance with the Act of Assembly.