## Commonwealth v. Planchak

*Martin E. Cusick*, for petitioner.
*Edwin C. Moon*, for respondent.

ROWLEY, P. J., May 1, 1936.—This matter is before the court on petitioner's rule to show cause why the evidence, two bottles of whisky and one bottle of gin, should not be suppressed and the prosecution dismissed.

On November 8, 1935, petitioner was conducting a restaurant at 607 Sharpsville Avenue in the City of Sharon. On June 1, 1935, a retail beverage license was issued to him for that location.

On November 8, 1935, Edwin E. Rahn, an enforcement officer of the Pennsylvania Liquor Control Board, visited the premises at 607 Sharpsville Avenue and took therefrom the several bottles of liquor above mentioned. Petitioner has been indicted in this court for violation of section 23 (*n*) of the Beverage License Law of July 18, 1935,

P. L. 1217. Petitioner seeks the return of the liquor and dismissal of the prosecution.

Petitioner sets out his allegations in eight paragraphs. The Commonwealth's answer admits the allegations contained in each of the eight paragraphs of the petition. Petitioner, with the approval of the Commonwealth, has submitted a pen-and-ink floor plan of the ground floor at 607 Sharpsville Avenue.

From the admitted facts it appears, inter alia, that petitioner occupies a two-story frame dwelling. On the street floor, the front room is occupied and used as a lunch room, 24 feet by 17 feet 2 inches. At the rear of the lunch room, and opening into it, is a public dining room, 13 feet 6 inches by 14 feet 1 inch. To the rear of the public dining room, and opening into it, is a kitchen, 13 feet 2 inches by 8 feet 2 inches. Entering the kitchen from the public dining room, there is to the right of the kitchen a private dining room, 13 feet 2 inches by 12 feet 4 inches. From a buffet in the last-mentioned room the liquor in question was taken by the officer. In petitioner's petition the room in which the liquor was found is referred to as a "private dining room", whereas the floor plan submitted designates it as a "private living room". We shall hereafter refer to it as the private dining room.

It is conceded that the officer who seized the liquor proceeded without a search warrant. Accordingly, the petitioner argues that the search and seizure was unlawful as contravening sections 8 and 9, of article I, of the Constitution of Pennsylvania.

Petitioner admits that as a dealer licensed to sell malt and brewed beverages he was subject to the prohibition contained in section 23 ($n$) of the Act of July 18, 1935, P. L. 1217, which declares that it shall be unlawful for any "retailer to have in his possession on any licensed premises, or to permit the storage on the licensed premises, of any spirituous, vinous or alcoholic liquors or alcohol of any sort except malt or brewed beverages."

The first question presented is: Whether petitioner had the liquor in question "in his possession on any licensed premises". It will not be argued that petitioner did not have this liquor in his possession. His petition alleges that the liquor was taken from his home, and thereby admits his possession of it. Under the admitted facts, was the possession on the licensed premises, actual or constructive? Premises is a word having various meanings dependent upon the subject matter in connection with which it is used. It has no fixed legal significance. It has been construed to mean buildings; a dwelling house; and even rooms or apartments within a building, or a floor of a building: 49 C. J. 1328. To be considered a part of the premises the particular locus must be so connected with the business as to form a component or integral part of it. That is to say "premises" is to be distinguished from "property". They are not always synonymous. "Premises" often has a narrower meaning, depending upon the connection in which the term is used.

To identify the "licensed premises", reference must be had to the petition upon which the license was issued. An inspection of such petition discloses the following questions and answers:

"2. The particular place for which the license is desired is 607 Sharpsville St., Sharon, Mercer County. Following is a detailed description thereof, Two story, frame building, containing 1 dining room, store room, kitchen, and four rooms on the second floor used as living quarters."

"8. A full description of the portion of the premises for which license is desired is as follows: Tables and chairs, lunch counter. Restaurant. (If the application is for retailer's license for eating place, the following additional information is required):

"(a) The exact dimensions of the room occupied as eating place are 24 x 17 dining room, containing 6 tables, 1 lunch counter 16 feet long 2 feet wide.

"(b) The said room contains 10 tables and 40 chairs, accommodating 40 persons at one time.

"(c) (If equipped with lunch counter) The said room contains 1 lunch counter being 16 feet in length and 2 feet in width, with 6 seats or chairs permanently fastened thereto.

"(d) The room, or place where beverages for consumption are to be served, will at all time visible and assessible [accessible] to the general public."

"9. A full history and nature of other business to be conducted concurrently with the sale of beverages is as follows: Restaurant. Another dining room 14.2 by 13.6 contains 4 tables—16 chairs."

By virtue of the license issued to him, petitioner was authorized to sell malt and brewed beverages for consumption on the premises only "in a room or rooms or place on the licensed premises at all times accessible to the use and accommodation of the general public": Act of July 18, 1935, P. L. 1217, sec. 22; Application of Blake E. Irvin Post No. 525, 18 D. & C. 689. The "licensed premises", then, includes only the room or space wherein the licensee may exercise his privilege to sell. That it is the intention of the law to confine the exercise of the license to a designated space or room, or rooms, is indicated by section 11(h) of the Act of May 3, 1933, P. L. 252, as amended by section 11 of the Act of July 18, 1935, P. L. 1217,, which requires an applicant to state in his petition for license: "A full description of that portion of the premises for which license is asked".

The license issued to petitioner authorized sales only in the spaces or rooms designated in paragraph 8, and possibly paragraph 9, of his application, namely, the room 24 feet by 17 feet, containing the lunch counter, and possibly the adjoining dining room, 14.2 feet by 13.6 feet. Petitioner was not licensed to sell within the room referred to as the private dining room, and from which the liquor was taken, for the reason that said room was not included in his description of "that portion of the premises for which license is asked". Notwithstanding that

the room was actually not a portion of the premises for which license was obtained, it might become constructively a part of the licensed premises to an extent sufficient to attract the prohibition contained in section 23 ($n$) of the Act of July 18, 1935, P. L. 1217, by reason of its proximity to the licensed premises, and especially by petitioner's use thereof in connection with his business as a retailer.

We are construing a penal provision, and therefore we do not feel justified in holding that mere proximity of the private dining room in question to the licensed premises constitutes the former a part of the latter to an extent which brings the private dining room within the prohibition of section 23 ($n$).

If it be shown that petitioner served food or beverages within the private dining room, or otherwise used it, however infrequently, in connection with his business, we should have no hesitation in finding that the above quoted prohibition applied therein. It may be noted, from the floor plan submitted, that the private dining room is not directly accessible from either of the rooms described in the license application.

We have given consideration to the fact that the legislature applied the prohibition to the licensed premises. The use of the adjective "licensed" restricts the meaning of the term "premises". The legislature had power to apply the prohibition to the entire premises of the defendant but it did not do so. Instead, it directed the prohibition to the "licensed premises", and we are without power to extend the prohibition to a part of the premises not actually or constructively within the prohibited area.

While a prudent licensee will not only observe all of the express injunctions of the law under which he exercises a privilege but will also avoid the "appearance of evil", we must not characterize lack of ordinary judgment as criminal conduct.

Having concluded that the liquor taken was not on the licensed premises, and the Commonwealth having conceded that it was seized and taken without a search war-

rant, we are confronted with the question whether we should direct that the liquor be returned to the petitioner.

The question of a petitioner's right to the return of property unlawfully seized to be used as evidence in a prosecution against him has been the subject of numerous cases decided by the Federal courts and the courts of Pennsylvania. Some of the decisions were based upon defendant's delay in proceeding to obtain a return of the property. In several cases, including Pennsylvania decisions, the reason assigned for permitting property to be offered in evidence which had been illegally seized was that an inquiry into the legality of the seizure would develop a collateral issue. In still other cases the decisions rest entirely upon the fact that possession of the specific property was prohibited by law, whereby the property became contraband.

In the present case petitioner raises the question of his right to a return of the particular property in a separate proceeding. This renders inapplicable certain decisions which rest upon the objection to considering a collateral issue in the trial of a criminal complaint. Since the repeal of State and Federal legislation, including constitutional amendments, which formerly prohibited the possession of intoxicating liquor, it is permissible for one to possess intoxicating liquor under certain circumstances. A lawful possession of liquor would not, of course, constitute the liquor "contraband." We are of the opinion that the circumstances, so far as disclosed in this proceeding, under which petitioner possessed the liquor in question did not constitute an unlawful possession; therefore the liquor was not contraband, and the cases dealing with contraband articles do not aid us in the determination of the question here involved.

The rule announced by the Supreme Court of the United States is that property taken from a defendant by an invasion of his constitutional rights will be excluded as evidence in a prosecution against him and will, in a proper case, be ordered returned to the defendant.

In Gouled v. United States, 255 U. S. 298, 312, the court said:

". . . and where, in the progress of a trial, it becomes probable that there has been an unconstitutional seizure of papers, it is the duty of the trial court to entertain . . . a motion for their exclusion . . . and decide the question as then presented, even where a motion to return the papers may have been denied before trial. A rule of practice must not be allowed for any technical reason to prevail over a constitutional right."

Again in Amos v. United States, 255 U. S. 313:

"When it is clear and undisputed that property [illegal liquor] used in evidence against a defendant on a criminal trial was procured by the Government through an unconstitutional search and seizure in his home, his petition . . . is not too late when made immediately after the jury was sworn, and his motion to exclude the property, and testimony concerning it, from evidence should not be denied as inviting a collateral issue."

However, in Commonwealth v. Grasse, 80 Pa. Superior Ct. 480, it was decided that the decision of the United States Supreme Court under the fourth and fifth amendments to the Federal Constitution, which do not apply to the several States, are not binding upon the States even in the construction of similar provisions in their own constitutions.

It was said in Commonwealth v. Vigliotti (No. 1), 75 Pa. Superior Ct. 366, 378:

"Conceding that the packages were taken from the store and residence of the defendants without authority, the admissibility of the evidence is not affected by the illegality of the means through which it was obtained."

In Commonwealth v. Rubin, 82 Pa. Superior Ct. 315, 327, it was said:

"If the search warrant were illegal, or if the officer . . . exceeded his authority, the party on whose complaint the warrant issued, or the officer, would be respon-

sible for the wrong done; but this is no good reason for excluding the papers [lottery tickets] seized in evidence, if they were pertinent to the issue, as they unquestionably were. When papers are offered in evidence the court can take no notice how they were obtained, whether lawfully or unlawfully; nor would they form a collateral issue to determine that question".

In Commonwealth v. Dabbiero, 89 Pa. Superior Ct. 435, liquor had been seized in defendant's dwelling. In disposing of a petition to suppress the evidence, the court said:

"We deem it our duty, however, to state that the course pursued by the officers . . . was altogether irregular."

However, the court refused to suppress the evidence, saying:

"If the rights, civil or constitutional, of a defendant had been infringed by the manner of the seizure of his property, he has his remedy, civil or criminal, as the case may be, against the offender".

The decision last quoted apparently rests upon the rule of Commonwealth v. Hunsinger, 89 Pa. Superior Ct. 238. It is to be noted that in Commonwealth v. Stubler, 84 Pa. Superior Ct. 32, Commonwealth v. Rubin and Commonwealth v. Hunsinger, supra, the property involved was illegal per se.

In Commonwealth v. Larkin, Jr., 3 D. & C. 259, Commonwealth v. Kekic, 3 D. & C. 273, and in other cases, property obtained by an illegal search was suprressed or directed to be returned to the defendant.

In the case at bar the Commonwealth cites Commonwealth v. One Box Benedictine, etc., 290 Pa. 121, apparently to sustain the search and seizure without a warrant. The case cited was an interpretation of the Act of March 27, 1923, P. L. 34, which provided: ". . . no search warrant shall issue to search any private dwelling occupied as such . . . unless it is in part used for some business purpose, such as a store, shop", etc. Neither the act quoted

nor the decisions thereunder authorized search without a warrant of premises occupied partly as a dwelling and partly for business.

In Commonwealth v. Kekic, supra, Judge Fox wrote a comprehensive opinion in which he sustained the defendant's claim to the return of liquor obtained by an unlawful search and seizure in defendant's dwelling.

In Commonwealth v. Street et al., 3 D. & C. 783, Judge Stern and Judge Gordon refused a petition to exclude from evidence liquor seized in violation of defendant's constitutional rights. In this opinion the question is treated exhaustively with a long list of authorities pro and con. In Commonwealth v. Street, et al., supra, the property taken was clearly contraband. In the Street case the following criticism of the doctrine adopted by the Federal courts is quoted from Professor Wigmore:

"The natural way to do justice here would be to enforce the splendid and healthy principle of the 4th Amendment directly, i. e., by sending for the high-handed, overzealous marshal who had searched without a warrant, imposing a thirty-day imprisonment for his contempt of the Constitution, and then proceeding to affirm the sentence of the convicted criminal. But the proposed indirect and unnatural method is as follows: 'Titus, you have been found guilty of conducting a lottery; Flavius, you have confessedly violated the Constitution. Titus ought to suffer imprisonment for crime, and Flavius for contempt. But no! We shall let you both go free. We shall not punish Flavius directly, but shall do so by reversing Titus's conviction. This is our way of teaching people like Flavius to behave, and of teaching people like Titus to behave, and incidentally of securing respect for the Constitution. Our way of upholding the Constitution is not to strike at the man who breaks it, but to let off somebody else who broke something else!' "

The Street case also cites Commonwealth v. Exler, 61 Pa. Superior Ct. 423, as authority for admissibility as

evidence of property (clothing) obtained as a result of unlawful search and seizure. The report of the Exler case is not in sufficient detail to determine to what extent it can be regarded as an authority on the question for which it is cited.

In the Street case the property seized was being transported in motor trucks and was contraband.

In I Greenleaf on Evidence, sec. 254(a), the rule is thus stated:

". . . though papers and other subjects of evidence may have been *illegally taken* from the possession of the party against whom they are offered, or otherwise unlawfully obtained, this is no valid objection to their admissibility if they are pertinent to the issue. The Court will not take notice how they were obtained, whether lawfully or unlawfully, nor will it form an issue to determine that question."

To the same effect is 4 Wigmore on Evidence, sec. 2183:

". . . it has long been established that the *admissibility of evidence is not affected by the illegality of the means through which the party has been enabled to obtain the evidence,*" and "The illegality is by no means condoned; it is merely ignored."

The Pennsylvania cases on the questions here involved which were decided previously to June 25, 1927, seem to rest largely upon the fact that the property involved was contraband. In 1927, the Supreme Court of Pennsylvania allowed an appeal from the Superior Court's decision in Commonwealth v. Dabbiero, 89 Pa. Superior Ct. 435, on this single question:

"Was defendant deprived of the right given him by article I, section 9 of the Constitution of the State, by the admission in evidence of the intoxicating liquors, for the illegal possession of which he was indicted, in view of the fact . . . that the Commonwealth obtained possession of them through a search warrant which was wrongfully issued and served?"

In disposing of the question the Supreme Court expressly finds that the search and seizure was illegal, saying:

"Such a warrant ought not to have been issued, and, if issued, ought not to have been served. Defendant's remedy, however, is not in this proceeding".

The court further held:

"It follows that, since the constitutional provision under consideration did not forbid the admission in evidence of the liquors, though taken under a search warrant wrongfully issued and served, and no other constitutional provision had any bearing on the subject, appellant's constitutional rights were not infringed by their receipt in evidence, and the only point on which the appeal was allowed must be decided against him."

While the matter is not entirely free from doubt, we take the opinion of the Supreme Court in Commonwealth v. Dabbierio, 290 Pa. 174, to rule that, without regard to the character of the property involved, articles obtained by an unlawful search and seizure may be admitted as evidence in a prosecution of the possessor. In the Dabbierio case Mr. Justice Kephart dissented. There was the further circumstance that the property in question was contraband.

In Commonwealth v. Miller, 20 D. & C. 579, Judge Fox, who decided Commonwealth v. Kekic, reversed his former decision for the reason that ". . . we are controlled by the case of Commonwealth v. Dabbierio, 290 Pa. 174".

Before concluding this opinion we are impelled to say that a retailer of malt and brewed beverages who uses part of his house for such purposes must refrain from the possession of prohibited liquors in a portion of the home where there are easy means of access from the licensed premises to the liquor, for a slight circumstance may constitute rooms of the house, not actually licensed, a part of the licensed premises within the meaning of the prohibition above quoted.

In its brief the Commonwealth propounds two questions:

"Whether an enforcement officer of the State Liquor Control Board has the authority to enter the private living quarters, which are a part of the licensed premises, and take from the said quarters alchoholic liquors without a search warrant?"

The question as stated is somewhat confusing because reference is to "the private living quarters which are part of the licensed premises." If "the private living quarters are part of the licensed premises" the former are no longer private living quarters. Nevertheless, we answer the question as stated in the negative.

The second question of the Commonwealth is:

"Whether it is unlawful for a malt beverage licensee to have or possess alcoholic liquors in his private living quarters, which are a part of the licensed premises?"

The term "alcoholic liquors" contained in the question is taken to mean alcoholic liquors other than malt or brewed beverages. Our answer to this second question is that it is unlawful for a malt beverage licensee to possess alcoholic liquors, except malt and brewed beverages, in his private living quarters which are a part of the licensed premises, but we add the qualification that "private living quarters" do not become part of the licensed premises merely because they are within the same building as the licensed area, nor are so-called private living quarters to be accorded the sanction of a home if they are easily accessible from the licensed portion of the premises and if said private living quarters are used to any extent, however infrequently, in connection with the licensed business or a business conducted concurrently with said licensed business.

The questions propounded by petitioner are somewhat similar to those of the Commonwealth, viz.:

"Whether an enforcement officer of the State Liquor Control Board has the authority to enter the private living

quarters of a malt beverage licensee which are a part of the building in which the licensed premises are located, and take from said private living quarters alcoholic liquors, without a search warrant?"

We answer this in the negative.

"Whether it is unlawful for a malt beverage licensee to have or possess alcoholic liquors in his private living quarters, which he occupies as a home for himself and family, and which are a part of the building for which a malt beverage license has been issued, said private living quarters being adjacent to the particular portion of the premises for which the license was issued?"

We answer this in the negative, subject to the qualification given in our answer to the questions propounded by the Commonwealth, viz., mere proximity within the same building does not constitute private living quarters part of the licensed premises in the absence of evidence that the living quarters were used somehow in connection with the licensed business or some other business conducted concurrently with the licensed business. We repeat that where living quarters are easily accessible to the licensed premises slight circumstances are sufficient to constitute the living quarters a part of the licensed premises within the meaning of the prohibition contained in section 23 ($n$) of the Act of July 18, 1935, P. L. 1217.

In other words, one who claims the sanction of a home for living quarters within a building, part of which is licensed for the sale of liquor, must in the conduct of his business completely sever his business premises from the living quarters. If a licensee for malt and brewed liquors might escape the prohibition of the statute by denominating as "living quarters" a room or rooms adjacent to the licensed premises the statute would be valueless. Whether "living quarters" constitute a bona fide home will be a proper subject for inquiry whenever such living quarters are in close proximity to licensed premises. The answer is not to be found either in the fact that the particular

room or rooms were not described in the petition for license, nor in the fact that the licensee denominates them "private living quarters". The question is rather whether the so-called living quarters have been used to any extent, however infrequently, in connection with the licensed business or any business conducted concurrently therewith, and whether the so-called living quarters are actually visited, however seldom, by the patrons of his business, or whether there are other circumstances which justify the inference that the licensee has not at all times maintained a complete and definite separation of his home from the licensed premises.

Whether there are circumstances in the instant case sufficient to justify the inference that the so-called living quarters were not separate and distinct from the licensed premises must depend upon proof not submitted to us.

We therefore conclude, (1) that the admitted facts are not sufficient to justify us in holding that the so-called private dining room was a part of the licensed premises; (2) that the seizure of the property without a warrant was illegal; (3) that notwithstanding the property was illegally seized we are without power, under the rule in Commonwealth v. Dabbierio, 290 Pa. 174, to direct the return of the property or to suppress it as evidence; (4) that notwithstanding (3) the property may be inadmissible for reasons other than its illegal seizure; (5) that we are without authority to dismiss the proceedings.

*Order*

And now, May 1, 1936, this matter having been submitted upon defendant's petition and Commonwealth's answer and upon briefs of counsel, thereupon, after due and careful consideration, it is ordered, adjudged and decreed that the rule heretofore granted to suppress the evidence, to return the property seized and to dismiss the prosecution be discharged for the reasons set forth in the foregoing opinion.